IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Gwendolyn Camilla Wallace, | ) | Bk No. 25-01435 |
| | ) | Chapter 7 |
| Debtor, | ) | Judge Nancy King |
| | ) | |
| Eva M. Lemeh, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 3:25-bk-90059 |
| | ) | |
| Napoleon Edmondson, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT TO AVOID FRAUDULENT TRANSFERS AND TO RECOVER THE VALUE OF SUCH TRANSFERS AND TO PARTITION AND SELL REAL PROPERTY**

Comes Eva M. Lemeh, Trustee for the above-captioned estate, by and through counsel, and respectfully files her Amended Complaint and alleges as follows:

### I. JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.

2. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (H), (N) and (O).

3. Venue of this action is proper in this Court pursuant to 28 U.S.C. §§1408(1) and 1409(a).

4. This Amended Complaint is filed to revise and amend the original Complaint filed in this case on June 2, 2025 (Docket No. 1).

## II. PARTIES

5. Gwendolyn Camilla Wallace ("Debtor") filed a voluntary Chapter 7 petition on April 3, 2025 ("Petition Date") with this Court.

6. Eva M. Lemeh was appointed as trustee in this proceeding on the Petition Date and is currently serving in that capacity ("Plaintiff" or "Trustee").

7. Upon information and belief, Napoleon Edmondson ("Edmondson" or "Defendant") is a resident of the state of California. Upon further information and belief, Edmondson is the only living son or daughter of Napoleon Glass.

## III. FACTUAL BACKGROUND

8. On the Petition Date, the Debtor resided at 120 Islandia Drive, Nashville, Tennessee 37217 (the "Real Property").

9. On June 27, 2019, the Debtor was a party to a Quitclaim Deed with Napoleon Glass ("Glass"). Upon information and belief, the Quitclaim Deed transfers Glass' interest in the Real Property from himself to himself and the Debtor. Upon further information and belief, this a co-tenancy interest in the Real Property with Glass and the Debtor, with a right of survivorship. The Quitclaim Deed shall be referred to as the "2019 Quitclaim Deed" and is attached as <u>Exhibit A</u>.

10. On or around August 24, 2019, Glass passed away.

11. Upon further information and belief, following Glass' death, his 50% interest in the Real Property transferred to the Debtor based upon the survivorship language in the 2019 Quitclaim Deed.

12. The Debtor continued to live in the Real Property following Glass' death and provided upkeep and mortgage payments for the Real Property. The Debtor testified at her meeting of creditors that she provided some or all of the original down payment for the purchase of the Real Property.[1]

13. Following the execution of the 2019 Quitclaim Deed and Mr. Glass' passing, Edmondson began to assert that the deed executed by Glass was fraudulently induced. On January 8, 2021, Edmondson, through attorney Brent Hays, issued a letter to the Debtor asserting that she "obtained your interest in the property through means designed to manipulate Mr. Glass due to his vulnerable mental state."

14. The Debtor further testified at her meeting of creditors that Edmondson continued to harass her throughout 2021.

15. On January 29, 2022, the Debtor executed a Quitclaim Deed with Edmondson whereby the Debtor conveyed her interest in the Real Property to Edmondson (the "Transfer"). This quitclaim deed shall be referred to as the 2022 Quitclaim Deed and is attached as <u>Exhibit B</u>.

16. The 2022 Quitclaim Deed also contained the following language regarding the Debtor's transfer of interest:

> Grantor grants one-half of the Grantor's rights, title, and interest in the above-described property and premises to the Grantee as **joint tenants in common with rights of survivorship** *with additional terms as set forth below*. Grantor and Grantee shall remain joint tenants in common for the remainder of Grantor's life and Grantor shall retain possession for the remainder of her life in exchange for

---

[1] The Real Property was purchased by Glass via Warranty Deed on or around December 3, 2003.

relinquishment of her right in the property upon her death to Grantee's heirs should Grantee die before Grantor.

Therefore, Grantor gives up her right to transfer her interest in the property to anyone other than grantee's heirs. Upon grantor's death the ownership of the property shall vest in the grantee's heirs, legal representatives, or assigns.

17. The 2022 Quitclaim Deed states in the Oath of Consideration, "I hereby swear or affirm that the actual consideration for this transfer is $0.00, and the true value that the property would command at a fair and voluntary sale is approximately $201,900.00." The Oath of Consideration is executed by the Debtor.

18. The Debtor testified at her meeting of creditors that Edmondson appeared at the real property (with another man) and demanded that she sign the 2022 Quitclaim Deed. The Debtor further stated that she did not receive any compensation or value otherwise from Edmondson for the transfer in the 2022 Quitclaim Deed.

19. Following the Transfer, the Trustee asserts that the Debtor held at most a 50% interest in the Real Property which was encumbered by the survivorship language outlined in Paragraph 16. The Transfer was a significant reduction in the value of the Debtor's interest in the Real Property. Furthermore, the survivorship language significantly devalued the percentage of the Real Property that the Debtor held after the execution of the 2022 Quitclaim Deed.

20. In addition to the present bankruptcy case, the Debtor also filed a Chapter 13 bankruptcy case on August 31, 2022, and an additional Chapter 13 case on May 1, 2024.

21. Upon information and belief, the Debtor was either insolvent on the date of the Transfer or was rendered insolvent by the Transfer, as the Debtor's assets (following the Transfer) were less than the Debtor's liabilities.

22. While the Real Property is encumbered by a purported mortgage loan with Deutsch Bank National Trust, the Trustee asserts that the Real Property has significant equity.

23. The Debtor's interest in the Real Property is property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Following the avoidance of the Transfer (as set out below), the Trustee asserts that the Debtor will have a 100% interest in the Real Property.

## IV. CAUSES OF ACTION

### COUNT 1: Avoidance of Fraudulent Transfer Pursuant T.C.A. § 66-3-101 *et seq.* and T.C.A. § 66-3-301 via the strong arm provisions of 11 U.S.C. § 544(b)

24. The Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein, and pleads in the alternative as follows.

25. The Debtor was in a precarious financial condition at the time of the Transfer.

26. The Debtor received far less than reasonably equivalent value for the Transfer, in fact, the Debtor received no value in exchange for the Transfer.

27. The Transfer to Edmondson was actually and/or constructively fraudulent.

28. The Transfer to Edmondson was made within the four years prior to the Petition Date.

29. The Transfer was of property of the Debtor.

30. The Debtor was insolvent on the date of the Transfer because her liabilities exceeded the equity value in any unencumbered, non-exempt assets in which Debtor had a sole ownership interest at that time.

31. Alternatively, the Transfer rendered Debtor insolvent because after the Transfer, the value of Debtor's remaining unencumbered, non-exempt assets were insufficient to fully satisfy her outstanding liabilities.

32. The Trustee is entitled to avoid, and recover back, the Transfer, pursuant to among other things, Tennessee's law against fraudulent conveyances, T.C.A. § 66-3-101, *et. seq.*, and Tennessee's codification of the Uniform Fraudulent Transfers Act ("UFTA"), T.C.A. § 66-3-301, *et. seq.*, which include strong-arm provisions of the Trustee pursuant to 11 U.S.C. § 544(b). Additionally, all amounts avoided under the UFTA may be recovered by the Trustee pursuant to 11 U.S.C. § 550.

33. Under the Tennessee fraudulent conveyance laws and Tennessee's codification of the UFTA detailed in paragraph 31, the Trustee may recover transfers made in the four (4) year period directly preceding the Petition Date. The Transfer sought by the Trustee occurred within four (4) years of the Petition Date. Pursuant to the UFTA, the Trustee may recover the value of the Transfer and/or the Real Property that is source of the Transfer.

34. The Trustee asserts that the Transfer is an avoidable fraudulent transfer because it satisfies all necessary elements of the UFTA.

35. Once the Transfer is avoided via the UFTA, the Transfer may be recovered for the benefit of the estate pursuant to 11 U.S.C. § 550.

**COUNT 2: Approval of sale of Real Property and Partition of Proceeds from Sale of Rela Property pursuant to 11 U.S.C. § 363(h)**

36. The Trustee repeats and realleges the foregoing allegations as if fully set forth herein, and pleads in the alternative as follows.

37. The Trustee asserts that following the avoidance of the 2022 Quitclaim Deed, the Real Property will own in 100% fee simple ownership by the Debtor, and thus the bankruptcy estate. Given that estate would hold a 100% ownership in the Real Property, the Trustee does not believe an order under §363(h) is unnecessary, however, the Trustee shall continue to plead this

Count in the event the Court holds a different ruling on the alleged fraudulent transfer of the 2022 Quitclaim Deed.

38. The Debtor's interest (and proceeds of any sale of interest) in the Real Property, including the interest the Trustee seeks to recover herein, is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

39. The Trustee asserts that partition of the property between the Debtor and Edmondson would be impracticable. The sale of the undivided interest of the Debtor would realize significantly less for the estate than the sale of such property free of the interest of Edmondson.

40. The benefit to the bankruptcy estate for the sale of the Real Property free from the interests of Edmondson will outweigh the detriment, if any, to the co-owner. Edmondson does not reside at the Real Property.

41. The Real Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light, or power.

42. Accordingly, the Real Property should be sold pursuant to 11 U.S.C. § 363(h), as applicable, and only if the Court finds that Edmondson holds any ownership interest in the Real Property.

WHEREFORE, the Plaintiff requests that the Court enter an order and judgment in this adversary proceeding:

A. Avoiding and setting aside the Transfer and finding that such avoided transfer is preserved for the benefit of the Debtor's bankruptcy estate, pursuant to 11 U.S.C. § 544, T.C.A. § 66-3-101, *et seq.*, and T.C.A. § 66-3-301, *et seq.*;

B. Further order that the Trustee may recover the Transfer, the value of the Transfer, and/or the Real Property associated with the Transfer from Edmondson, pursuant to 11 U.S.C. §§ 550 and 551;

C. Award the Trustee pre-judgment interest and assess costs against Edmondson;

D. Award the Trustee post-judgment interest on any judgment rendered against Edmondson at the highest rate allowable by law;

E. Authorize the Trustee to sell the Real Property located at 120 Islandia Drive, Nashville, Tennessee, free and clear of the interest of the co-owner, if applicable to the Real Property;

F. Authorize the Trustee to enter into and execute a contract to sell, together with any deed and closing statement, on behalf of the bankruptcy estate and the interest of Edmondson, if applicable to the Real Property;

G. Authorize the Trustee to divide the proceeds, if applicable and as determined by this Court, between the estate and Edmondson after paying the balance of the deed of trust attached to the Real Property, any unpaid real estate taxes, and the costs of the sale.

H. Granting such other and further relief as is just and proper.

Dated this 13th day of June, 2025.

Respectfully submitted,

/s/ Justin T. Campbell
Justin T. Campbell (TN Bar No. 031056)
Thompson Burton PLLC
1801 West End Avenue, Suite 1550
Nashville, Tennessee 37203
Tel:  615-465-6015
Email: justin@thompsonburton.com

*Attorneys for Trustee/Plaintiff*