SO ORDERED.
SIGNED 8th day of October, 2025

_____
Nancy B. King
U.S. Bankruptcy Judge

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | 3:25-bk-01435 |
| GWENDOLYN CAMILLA WALLACE ) | Chapter 7 |
| ) | Judge Nancy B. King |
| Debtor. ) | |
| ) | |
| ) | |
| EVA M. LEMEH, Trustee, ) | Adv. No. 3:25-ap-90059 |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| NAPOLEON EDMONDSON, ) | |
| ) | |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GWENDOLYN CAMILLIA WALLACE, ) | |
| ) | |
| Debtor/Third-Party Defendant. ) | |

## MEMORANDUM OPINION

The Trustee, who is Plaintiff and Counter-Defendant in this Adversary Proceeding, ("Trustee") filed a Motion to Dismiss, in-part, the Third-Party Complaint filed by Napolean Edmondson ("Edmondson") for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy

Procedure 7012. Edmondson opposes the Motion. The Court finds that the Trustee's Motion should be GRANTED.

## STANDARD FOR MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678 8(internal quotation marks and citations omitted). "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jordan v. Pritchard* (*In re Pritchard*), 633 B.R. 314, 326 (Bankr. E.D. Tenn. 2021).

## BACKGROUND[1]

Edmondson, a resident of California and the only child of the late Napoleon Glass ("Glass"), has been centrally involved in legal disputes regarding the Nashville property located at 120 Islandia Drive. Glass purchased this home in 2003 and lived there with Gwendolyn Wallace ("the Debtor"), with whom he shared a long-term relationship; however, they never married. After purchasing the property, it became encumbered by a mortgage in Glass's name only.

---

[1] There are several related contested matters pending in the main case, where Edmondson is represented by different counsel. The factual allegations set forth here incorporate facts as alleged in both the adversary proceeding and the main case to create a full picture. These factual findings are for purposes of ruling on the Trustee's Motion to Dismiss.

In 2016, Glass began exhibiting signs of cognitive decline, including significant dementia, which ultimately led to his admission to a mental health facility after an incident where he became lost while driving. Following his release, Edmondson and the Debtor received access to Glass's bank and mortgage accounts in order to assist with his finances and ensure the mortgage was paid. Edmondson noticed recurring delinquencies on the mortgage and made several payments himself to prevent foreclosure. After confronting the Debtor about these delinquencies, communication between them soured, and the Debtor ceased keeping Edmondson informed about Glass's medical care.

By May 2019, Glass's condition had worsened considerably, rendering meaningful conversation difficult. He required the Debtor's assistance for medical appointments, medication schedules, and transportation. During this period, Edmondson observed that Glass's speech became slurred and suspected a stroke, prompting discussions with the Debtor about arranging hospice care. Throughout this time, Edmondson understood from his father that the intention was for him to have the house, keeping it within the family, while not objecting to the Debtor remaining, provided she continued paying the mortgage.

On June 27, 2019, only a few days after Edmondson's discussion with the Debtor about hospice, Glass, accompanied by the Debtor, went to an attorney's office, wherein Glass executed a quitclaim deed transferring a fifty percent ownership interest in the property to the Debtor. The deed stipulated joint tenancy in common with a right of survivorship, and it expressly precluded Glass's heirs from inheriting his interest. Less than two months later, Glass passed away. Glass and the Debtor did not have separate legal representation when Glass executed the quitclaim deed. Edmondson believed that due to Glass's declining mental state and early-stage Alzheimer's diagnosis, he would never have knowingly signed away his property interest without proper

consideration or understanding. Alternatively, Edmondson alleged that the Debtor forged Glass's signature.

Edmondson, through counsel, demanded that the Debtor address the situation—advising that without a resolution, legal action would be taken against her. Ultimately, to avoid litigation, the Debtor agreed to execute another quitclaim deed in January 2022, granting Edmondson a fifty percent ownership interest. This 2022 deed redefined the property interests: the Debtor retained a life estate, ensuring possession during her life, while Edmondson acquired a contingent remainder. The deed contained explicit restrictions—the Debtor could not sell or transfer her interest to anyone other than Edmondson's heirs, and upon her death, ownership would vest in Edmondson's heirs, legal representatives, or assigns.

In concert with the 2022 deed, Edmondson's attorney presented a supplemental agreement. Edmondson offered to pay all mortgage arrears in exchange for the Debtor's agreement to notify him if future delinquencies occurred and to transfer her remaining interest to him if she could not maintain the payments. On advice of her counsel, the Debtor refused to sign this agreement, instead agreeing to maintain regular mortgage payments as a life tenant.

Despite the 2022 resolution, the Debtor failed to maintain the mortgage. The property entered arrears and foreclosure status. On August 31, 2022, the Debtor filed for Chapter 13 bankruptcy protection, listing Edmondson as a joint owner. The mortgage proof of claim in this proceeding reflected the property's foreclosure status and substantial prepetition arrears.

The initial Chapter 13 plan proposed by the Debtor contemplated the sale of the property within 90 days, with the proceeds to be split between the Debtor and Edmondson. The plan named an incorrect address for Edmondson (using a rental property address rather than his California residence, although he was clearly aware of the Chapter 13 filing), and the Debtor did not seek

Edmondson's agreement before filing bankruptcy or putting the sale plan in motion. Edmondson, when approached about selling, declined. The Debtor then amended her plan to cure the mortgage arrears and maintain her life estate.

After the Debtor failed to adequately fund her Chapter 13 plan, the bankruptcy was voluntarily dismissed in February 2024. She then filed a second Chapter 13 in May 2024, again proposing to pay the mortgage and unsecured debts. This plan was confirmed, but the Debtor defaulted after five months due to non-payment. This case was also voluntarily dismissed in March 2025.

On April 3, 2025, the Debtor filed for Chapter 7 bankruptcy protection. The Trustee moved to administer the estate and initiated an adversary proceeding within weeks, seeking to set aside the 2022 transfer to Edmondson and liquidate the property. The property was valued at over $400,000, with approximately $170,000 owed on the mortgage and $35,000 claimed as a homestead exemption by the Debtor.

Throughout this period, Edmondson contended that Wallace systematically used the bankruptcy process to delay foreclosure—allowing her to live rent-free in the property for nearly two years—while placing his remainderman interest at risk. Beyond the harm to his financial interest, Edmondson has asserted that Wallace's behavior—acquiring a property interest from Glass during a period of significant cognitive impairment, withholding information about bankruptcy filings and property status, and failing to abide by agreements—amounted to bad faith and abuse of the legal process.

## COUNTS AS ALLEGED BY EDMONDSON

Based on the above, Edmondson sets forth the following causes of action, and the Trustee seeks dismissal with regards to Counts I, II, III, IV, V, XI, and XIII:

| Count Number and Summarized Allegations | Trustee Seeks Dismissal? |
|---|---|
| I- Actual and Constructive Fraud/Undue Influence and/or Duress (concerning the signing of the June 27, 2019, deed) | YES |
| II- Forgery (concerning the signing of the June 27, 2019, deed) | YES |
| III- Declaratory Judgment (concerning rights under the June 27, 2019, Deed) | YES |
| IV- Quiet Title (concerning Debtor's alleged fraud with respect to the June 27, 2019, deed) | YES |
| V- Recission of Deed (concerning the signing and conduct surrounding the June 27, 2019, deed) | YES |
| VI- Equitable Estoppel and Judicial Estoppel (concerning the Debtor's conduct in prior bankruptcy filings) | NO |
| VII- Breach of Oral Contract (concerning the settlement in 2022) | NO |
| VIII- Promissory Estoppel (concerning the settlement in 2022) | NO |
| IX- Unjust Enrichment (concerning Edmondson not filing a lawsuit but instead settling in 2022) | NO |
| X- Exemption from Bankruptcy Discharge (concerning prior bankruptcy disclosures and the 2002 quitclaim deed) | NO |
| XI- Recission of Deed (repeat of Count V) | YES |
| XII- Injunction- Bankruptcy Court Injunctive Relief under 11 U.S.C. § 105(a); Rule 7065 (requesting the Debtor be enjoined from damaging or transferring the property) | NO |
| XIII- Constructive Trust (concerning the 2019 transfer of property). | YES |

## DISCUSSION

The Trustee alleges that Counts I, II, III, IV, V, XI, and XIII should be dismissed as barred by the statute of limitations. All of these claims relate to Edmondson's allegations of fraud, fraudulent conduct, or forgery with respect to the 2019 Deed. Edmondson contends that the 2022 settlement agreement and newer 2022 deed caused the 2019 fraud claims to become "moot." The statute of limitations only began to run upon Edmondson's "discovery" that the Debtor did not comply with her obligations under the settlement agreement. Additionally, or alternatively,

Edmondson contends the statute of limitation was "equitably tolled" because the Debtor misled Edmondson into failing to file an earlier action.

To determine the statute of limitations, the Court looks to state law. *Colebrook v. Thompson (In re Thompson)*, 2024 WL 1876102, at *6 (Bankr. M.D. Tenn. Apr. 29, 2024), *aff'd*, 668 B.R. 156 (B.A.P. 6th Cir. 2025). The Trustee contends that Tennessee's three-year statute of limitations applies because Edmondson's allegations regarding the applicable Counts sound in property tort actions. Edmondson does not set forth what statute of limitation he believes applies (except with regard to the recission claim in Count V--seven years); he instead relies on the argument regarding equitable tolling or that the statute has not run because of the 2022 settlement agreement.

T.C.A. § 28-3-105 provides:

> The following actions shall be commenced within three (3) years from the accruing of the cause of action:
> (1) Actions for injuries to personal or real property;

T.C.A. § 28-3-105 (West). *Demarest v. Kovacevich*, 2025 WL 2375372, at *6 (M.D. Tenn. Aug. 14, 2025) (quoting *Koshani v. Barton*, 374 F. Supp. 3d 695, 702 (E.D. Tenn. 2019) ("Tennessee also applies a three-year statute of limitations to tort actions involving injuries to personal or real property.")). In order to determine if an action is a property tort action, the court must look to the gravamen of the claims. *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 141 (Tenn. 2015) ("We hold that a court must identify the gravamen of each claim alleged to determine the applicable statute of limitations. Identifying the gravamen of a claim requires a court to consider both the legal basis of the claim and the injury for which damages are sought."). Every single factual and legal theory in Edmondson's Counts I-V, XI, and XIII is based on the alleged fraud of the Debtor up to and including the execution of the 2019 quitclaim deed. "Suits for fraud, deceit or conspiracy, whether they arise incident to a contract or not are actions in tort and must

be governed by the applicable tort statute of limitations." *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 729–30 (Tenn. Ct. App. 1980).

Under Tennessee law, a cause of action for fraud or intentional misrepresentation accrues when "'a plaintiff discovers, or in the exercise of reasonable care and diligence, *should have discovered,* his injury and the cause thereof.'" *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (citation omitted) (emphasis added). *See also Colebrook v. Huffman (In re Huffman)*, 2024 WL 1715136, at *6 (Bankr. M.D. Tenn. Apr. 19, 2024), *appeal dismissed sub nom.*, 2024 WL 2974542 (B.A.P. 6th Cir. June 13, 2024). Under any set of facts presented by Edmondson, the misrepresentations and/or fraud of the Debtor occurred more than three years ago. Edmondson relies upon two theories to rebut the passage of time: (1) the 2022 settlement agreement somehow temporarily suspended the cause of action and/or (2) the statute was equitably tolled by the Debtor's actions.

1. **Prelitigation Settlement Did Not Suspend the Statute of Limitations**

The parties' 2022 settlement was just that, a settlement. Notable is the complete absence of any agreement by the parties to toll or somehow suspend the applicable limitations statute if either party failed to fulfill their obligations. Courts have recognized that "[s]ettlement negotiations are by no means an 'extraordinary circumstance' that would prevent a plaintiff from diligently and timely pursuing his or her rights. Such a broad exception would swallow the general limitations rules, as the majority of parties involved in a legal conflict are involved in some form of negotiations prior to filing suit." *Randy's Towing, LLC v. Charter Twp. of Oscoda*, 2016 WL 4429620, at *2 (E.D. Mich. Aug. 22, 2016); *see also Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees,* 110 F.4th 870, 885 (6th Cir. 2024) (emphasizing that "[T]here is no evidence that the parties intended to toll any statute of limitations when they entered into the joint stay" and that

"their agreement was silent on tolling."); *Johnson v. Long John Silver's Rests., Inc.*, 320 F. Supp. 2d 656, 660 (M.D. Tenn. 2004) (noting that the parties began settlement negotiations and entered into a joint stay and tolling agreement, expressly providing that the statute of limitations would be tolled with respect to all class members for a certain amount of time); *Omnipoint Holdings, Inc. v. City of Southfield*, 203 F. Supp. 2d 804, 814 (E.D. Mich. 2002) (holding equitable tolling did not apply to TCA plaintiff's 30-day time limit based on pre-suit negotiations); *Raziano v. United States*, 999 F.2d 1539, 1541 (11th Cir. 1993) ("[P]re-suit negotiations to settle do not ordinarily estop a defendant from later asserting a limitations defense."); *DannaMarie Provost v. Hall*, 757 F. App'x 871, 877 (11th Cir. 2018) (holding that settlement negotiations did not toll limitations period where there was no "indication that plaintiffs ever asked Royal Caribbean to consent to an extension of the contractual limitation period while the parties engaged in settlement negotiations").

By Edmondson's rendition of the facts, Glass executed a quitclaim in July 2019. Edmondson demanded that the Debtor address the Islandia deed, advising that without a resolution, legal action would be taken against her. In resolution, the Debtor agreed to execute another quitclaim deed in January 2022, granting Edmondson a fifty percent ownership interest. A separate agreement contained the obligation to maintain the mortgage. Nothing in the parties' resolution contained a tolling agreement, and no tolling occurred from the settlement alone.

2. **Equitable Tolling**

To successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue. *Diminnie v. United States,* 728 F.2d 301, 305 (6th Cir.), *cert. denied,* 469

9

U.S. 842 (1984); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). "Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Still v. Bowers* (*In re McKenzie*), 510 B.R. 573, 583 (Bankr. E.D. Tenn. 2014) (quoting *Tapia–Martinez v. Gonzales,* 482 F.3d 417, 422 (6th Cir. 2007) (internal quotation marks and citation omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control[.]Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* (citing and quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir. 2000)) (internal quotation marks omitted). The reason equitable tolling is to be narrowly applied is that statutes of limitation are "vital to the welfare of society and are favored in the law." *Hill v. U.S. Dep't of Labor,* 65 F.3d 1331, 1336 (6th Cir.1995) (quoting *Wood v. Carpenter,* 101 U.S. 135 (1879)).

Edmondson's essential facts to invoke equitable tolling are: (1) the Debtor's failure to perform the agreement that required her to make mortgage payments, (2) the Debtor living in the home without paying, and (3) the Debtor filing for bankruptcy protection induced Edmondson not to file suit. Edmondson cannot now say he did not know he should have acted before the statute of limitations expired.

The Court will not invoke either equitable tolling or equitable estoppel to toll the limitations period. Edmondson does not allege facts that plausibly show that, when considering the above-outlined factors, he is entitled to equitable tolling of the limitations period due to circumstances beyond Edmondson's control. *In re McKenzie*, 510 B.R. at 583.

Based on the foregoing, the Court finds that the Trustee's Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII should be granted. Having found that Counts I, II, III, IV, V, XI, and XIII should be dismissed, the Court need not address the Trustee's Motion regarding Federal Rule of Civil Procedure 9(b) made applicable by Federal Rule of Bankruptcy Procedure 7009 to those same counts.

## CONCLUSION

Based on the foregoing, the Court finds that the Trustee's Partial Motion to Dismiss Counts I, II, III, IV, V, XI, and XIII pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy 9006, is well taken.

An appropriate Order will be entered.

**THIS MEMORANDUM OPINION WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**